**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| ZENITH ELECTRONICS LLC, PANASONIC CORPORATION, U.S. PHILIPS CORPORATION, and THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, <br><br> *Plaintiffs*, <br><br> v. <br><br> VIEWSONIC CORPORATION (alternatively named VIEWSONIC DISPLAY CO.), <br><br> *Defendant*. | Civil Action No. 9:13-cv-80570-DMM <br><br> JURY TRIAL DEMANDED |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE**

Plaintiffs[1] oppose Defendant ViewSonic Corporation's ("ViewSonic's") Motion to Transfer Venue [DE 28] and in support thereof state as follows:

## I.  INTRODUCTION

This case is one of three filed in this District against three small television manufacturers (ViewSonic, Curtis International Ltd., and Craig Electronics Inc.) that have avoided paying patent license fees that the entire industry has otherwise agreed to. The cases arise out of each defendant's infringement of the *same 5 patents* relating to the standard for transmitting and receiving digital television signals. Plaintiffs' infringement case in all three consolidated actions involves three primary issues:  (1) whether defendants' televisions comply with the national TV

---

[1] "Plaintiffs" refers to all of the plaintiffs: Zenith Electronics LLC, Panasonic Corporation, U.S. Philips Corporation, and The Trustees of Columbia University in the City of New York.

standard, which cannot seriously be disputed; (2) whether the five patents asserted do, in fact, cover the standard and are therefore essential to the standard (the same infringement issue in all three cases, regardless of manufacturer); and (3) a calculation of damages based on the number of televisions sold by each defendant (the royalty rates will be the same in all three cases).  In proving infringement in all three cases, plaintiffs will show the same relevant functionality of the televisions, refer to the *same* standard book, and draw upon the *same* evidence to prove infringement by compliance with the standard.

In seeking a transfer of this action to the Central District of California ("C.D. California"), ViewSonic mischaracterizes the documents and witnesses relevant to the issues in this case, and ignores the efficiencies that will result from allowing this case to be coordinated with the two consolidated cases that have overlapping – and often identical – discovery, claim construction and proof.

Given these straightforward issues, with regard to *ViewSonic's* infringing televisions, the documents and witnesses are – based on *ViewSonic's* own admissions – not located in California. ViewSonic admits that "the design, manufacturing, and development work is performed primarily in Taiwan and China." [DE 28, at 3-4.]  With respect to Plaintiffs' damages claim, because *all* of the asserted patents in the consolidated cases have been licensed to dozens of companies subject to a standard license agreement with fixed royalties, the only damages discovery likely needed would be the total number of infringing televisions sold.  That information can easily be produced by ViewSonic, for example, through sales documents.

Put simply, contrary to ViewSonic's hopeful wish that California is a more convenient forum for the witnesses and for access to sources of proof, it has not shown the relevance of *any*

California witness or the existence of *any* extensive document source in California. California is no more a relevant jurisdiction for discovery regarding ViewSonic than Florida.

## II.   FACTUAL BACKGROUND

On June 4, 2013, Plaintiffs filed three lawsuits – including the instant action – alleging that each individual defendant infringes the same five patents.[2] These patents all relate to the national standard for transmitting and receiving digital television ("DTV") in the United States, developed by the Advanced Television Systems Committee, Inc. ("ATSC Standard") and adopted by the Federal Communications Commission ("FCC"). [DE 1 ¶¶ 10-16.] More specifically, Plaintiffs allege that each defendant (including ViewSonic) infringes the Patents in Suit because it "makes, uses, offers to sell, sells (directly or through intermediaries), imports, licenses and/or supplies" television sets that comply with the ATSC Standard. [DE 1 ¶ 18]; *Craig ATSC* Action [DE 1 ¶ 18]; *Curtis ATSC* Action [DE 1 ¶ 18].

Defendant ViewSonic has moved to transfer the instant case to the C.D. California, suggesting that California is more convenient for the parties, the witnesses and for access to sources of proof. [DE 28, at 1.] ViewSonic is wrong on all fronts.

## III.   APPLICABLE LAW

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." A court applies a two-part test to determine whether transfer to another district is appropriate. *Lola Style, Inc. v. DM Merchandising, Inc.*, No. 1:13-cv-20206-DMM, DE 134 (S.D. Fla. July 11, 2013) (Middlebrooks, J.) (citing *Mason v. SmithKline Beecham Clinical Labs.*, 146 F. Supp. 2d 1355, 1359 (S.D. Fla. 2001)).

---

[2]   U.S. Patent No. 5,802,107, U.S. Patent No. 5,629,958, U.S. Patent No. RE 42,643, U.S. Patent No. 5,684,541 and U.S. Patent No. 8,115,873 ("Patents in Suit"). [DE 1.]

3

> First, the other district must be a venue in which the action could have been brought originally. *Id.* Second, a balancing of private and public factors must strongly weigh in favor of transfer. *Id.* An action might have been brought in any court that has jurisdiction over the subject matter of the action, if venue is proper and defendants are amenable to process there. Even though an action might have been brought in a different district, a plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations. This determination involves several factors, including the convenience of the parties and witnesses, the ease of access to evidence, the availability of process to compel the presence of unwilling witnesses, and the public interest.

*Lola Style*, DE 134, at 2-3 (internal citations omitted).

Rather than engaging in a "numbers game" based on one party presenting a longer list of potential witnesses, the "party seeking transfer must support its motion by *clearly specifying the key witnesses* to be called and particularly stating the significance of their testimony." *Mason*, 146 F. Supp. 2d at 1362-63. (emphasis added). Defendants who move for a transfer "have a heightened burden as they must prove with particularity the inconvenience caused by the plaintiff's choice of forum." *Id.* at 1359. If, however, the analysis shows that a transfer "merely shifts the inconvenience from one party to another, plaintiff's choice of forum should remain." *Id.* at 1361.

Unless "the balance of convenience of the parties *strongly favors* the defendant," a court will deny the motion. *Id.* at 1359 (emphasis in original).

In a case similar to this one, *Uniloc USA, Inc. et al. v. Distinctive Dev. Ltd.*, No. 6:12-cv-462, 2013 WL 4081076, ___ F. Supp. 2d ___ (E.D. Tex. Aug 5, 2013), provides a very recent example of the analysis that goes into a defendant's motion to transfer venue to the Northern District of California. In *Uniloc*, the court denied defendant's motion because relevant documents were located all over the world, and not primarily in California (e.g., in Los Angeles, New York, Japan, Canada, England, Sweden and Australia); the majority of non-party witnesses were beyond the subpoena power of both districts; certain witnesses were required to travel a

4

significant distance no matter where they testified; the transferor district was six months faster in getting to trial than the transferee district; and the existence of duplicative suits in multiple districts would create practical difficulties. For largely the same reasons as in *Uniloc*, this Court should deny ViewSonic's motion to transfer venue to the C.D. California.

### IV. ANALYSIS

#### A. This Action Could Have Been Brought In the C.D. California

Plaintiffs do not dispute that this action could have been brought in the C.D. California and is therefore eligible for transfer.

#### B. The Public and Private Factors Do Not Favor a Transfer to the C.D. California

Because this District has jurisdiction over all defendants in the three consolidated cases, this District provides the most appropriate forum for Plaintiffs to litigate the identical infringement claims against all the defendants.

##### 1. The convenience of the parties weighs against a transfer

In this case, a change of forum to the C.D. California would merely shift the inconvenience from ViewSonic, if any, to the Plaintiffs, to all other parties in the consolidated cases, and to the court system. First, with respect to Plaintiffs, one is located in Illinois, two are located in New York and one is located in Japan. With respect to ViewSonic, although not mentioned anywhere in its moving papers, ViewSonic is currently registered with the Florida Department of State, Division of Corporations and has designated a registered agent in Plantation, Florida. *See* Exhibit 1. Its website lists an office at 8201 Peters Road, Suite 1000, Plantation, Florida. *See* Exhibit 2. Nor is litigating outside California particularly difficult for ViewSonic – it is involved in patent infringement actions in districts throughout the U.S., and outside the C.D. California. *See*, *e.g.*, *Nokia Corp. et al v. ViewSonic Corp.*, Nos. 1:12-cv-

5

00552, 1:12-cv-00553, 1:12-cv-00554 (D. Del. 2012); *Media Digital, Inc. v. ViewSonic Corp. et al*, Nos. 1:12-cv-00168, 1:12-cv-00313 (D.N.H. 2012); *GeoTag Inc. v. Carhartt Inc. et al*, No. 2:11-cv-00175 (E.D. Tex. 2011); *Anu IP, LLC v. ViewSonic Corp.*, No. 2:12-cv-00243 (E.D. Tex. 2012).  As such, litigating in a district outside of its "home" state, and specifically in Florida where it maintains an office and is registered to do business, does not pose a significant inconvenience for ViewSonic.  And while ViewSonic claims in its brief that its Plantation office has been closed since 2009, its website continues to list an office in Plantation, Florida. *See* Exh. 2.

On the other hand, coordinating the cases to avoid conflicting claim construction and discovery issues is not only more convenient for Plaintiffs, it is also certainly more convenient even for ViewSonic.  Requiring duplicate discovery and motion practice would significantly inconvenience both Plaintiffs and ViewSonic.  This factor therefore weighs against a transfer, or is at best neutral.

### 2. **No significant documentary sources of proof will be lost by refusing transfer to the C.D. California**

The FCC mandates that all DTV transmitted signals comply with the ATSC Standard books, and that television manufacturers equip their television sets with DTV tuners capable of receiving such transmitted signals.  As noted in Plaintiffs' infringement contentions [DE 34, filed under seal], ViewSonic has admitted in its manuals that its televisions receive ATSC-compliant signals.  Plaintiffs' proof of infringement, therefore, likely will be by reference to the ATSC Standard books and not likely by reference to any particular television model.  In other words, there is little discovery needed about the inner-workings of any ViewSonic television – once ViewSonic concedes, as it must, that its televisions comply with the standard.  That is, it does not

matter how ViewSonic physically implements the standard (e.g., what chips it uses, etc.). What matters is that that television performs the standard.

ViewSonic is simply wrong to suggest that California provides the best source of its proof for this action. Plaintiffs' infringement case involves two primary factual disputes, neither of which require extensive fact discovery, whether from California or elsewhere. ViewSonic's relevant documents are those that confirm its televisions operate according to the standard, and sales records which simply report how many televisions have been sold.

Importantly, as to how its televisions operate, ViewSonic has not even attempted to show that a significant number of the relevant documents are located in the C.D. California. ViewSonic argues simply that Walnut, California is the location where the "majority of the [U.S.] marketing and sales work" takes place. [DE 28, at 5.] It is clear that ViewSonic's failure to allege technical documents are in California is no oversight -- the documents necessary to the infringement and invalidity issues in this action are not located in California. Moreover, while ViewSonic contends that its accused televisions would most conveniently be produced for inspection from its headquarters in California, it does not take into account that such inspections (if at all necessary) can be done there, while the evidence at trial, even if relevant, would or could be produced through video, photographs and drawings. ViewSonic well knows that the televisions *themselves* will not be needed at trial. *See*, *e.g.*, *Mason*, 146 F. Supp. 2d at 1364, where the court was not convinced that a site inspection was necessary, even if made possible by a transfer, because the site of the wrongful act was not relevant to the issues in the action. The actual televisions themselves are irrelevant to the infringement and invalidity issues. All that matters is how they operate, and whether they operate in compliance with the national television standard.

Of course, as in most patent infringement cases, the parties here will likely produce documents electronically. On that issue, courts in this District have recognized that, "in light of technological advances in document imaging, management, and retrieval, it is unlikely that document production will be unduly burdensome if transfer is denied." *Mason*, 146 F. Supp. 2d at 1364; *Microspherix LLC v. Biocompatibles, Inc.*, No. 9:11-cv-80813, 2012 WL 243764, at *3 (S.D. Fla. Jan. 25, 2012). In *Microspherix*, the court noted that, despite arguing that the relevant documents and other physical evidence were located in the jurisdiction of the transferee court, the movant did not allege that any of the sources of proof were incapable of being transmitted or shipped to Miami. Here, ViewSonic does not allege that the relevant documents cannot be transmitted – electronically or otherwise – to this District. ViewSonic's argument on the location of relevant documents should therefore be rejected for the same reason as in *Microspherix*.

Here, the technical documents are outside the U.S., and California is no more convenient than Florida. The sales documents needed simply report the number of units, and there is no burden on producing those records with a case in Florida. Where, as here, it does not appear that any significant evidence will be lost by refusing transfer, or that the movant will be unduly burdened in the production of evidence if the action is retained, transfer may be denied. *Mason*, 146 F. Supp. 2d at 1364. This factor is therefore neutral in the section 1404(a) analysis.

      **3.**    **The convenience of the witnesses does not dictate a transfer to California**

ViewSonic argues that the C.D. California is more convenient for the witnesses, but that hollow assertion is belied by its witness list that was served on the Plaintiffs just two days after its Motion to Transfer. *See* Exhibit 3. In its list of witnesses, ViewSonic has not identified *a single specific witness* in California as having knowledge of the relevant facts. *See* Exh. 3.

Instead, ViewSonic disclosed seven witnesses from New York, four witnesses from Illinois, two witnesses each from Japan and Maryland, and one witness each from Greece, The Netherlands and Washington, D.C.  Although ViewSonic places a great deal of weight on its assertion that there *may* be some witnesses from China and Taiwan, it does not identify any.  Even with respect to the two identified witnesses from Japan, they must be transported a significant distance regardless of venue, and if there is weight to be given that fact, then equal weight must be given to the *sixteen* witnesses in the U.S. and Europe who are closer to Florida than California.

With respect to ViewSonic *practicing* the ATSC Standard – it can admit (through written discovery) that it practices the standard (as it must), or deny it and thereby publicly take the position that it sells televisions that violate FCC regulations.  No witness testimony will be needed if they concede the obvious.  If at all necessary, testimony about the design of ViewSonic's televisions as it relates to practicing the ATSC Standard will be obtained from witnesses in Taiwan and China because ViewSonic admits, "the design, manufacturing, and development work is performed primarily in Taiwan and China."  [DE 28, at 3-4.]

On issues relating to the patents themselves, the identified individuals from New York, Illinois, Maryland, Greece, The Netherlands, and Washington, D.C. would be more inconvenienced by traveling to the C.D. California than if this case were retained in Florida.[3]  *Winner Int'l Royalty Corp. v. Wang*, 202 F.3d 1340, 1352 (Fed. Cir. 2000).  In *Winner*, the Federal Circuit affirmed the denial of defendant's motion to transfer where the parties, witnesses, and attorneys would travel from varied locations, several of which were closer to the forum state, and it could not be said that trying the case in the transferee forum would be any more

---

[3]  For example, Chicago, Illinois is approximately 700 miles closer to West Palm Beach, Florida, than it is to Los Angeles, California.

9

convenient. Here, the majority of the witnesses specifically identified by ViewSonic are closer to Florida than to California. Moreover, a transfer of this action to the C.D. California, separate from the consolidated cases, would cause *all* eighteen identified third party witnesses to be inconvenienced in having to make multiple trips to separate venues for separate sets of trials, or to be deposed multiple times in separate actions. As such, this factor weighs against a transfer of this action.

### 4. The operative facts here do not dictate a center of gravity in the C.D. California

The operative facts of this case are not more centered in California than in Florida. The infringing products are designed, developed and manufactured in Taiwan and China. [DE 28, at 3-4.] The products are sold throughout the world, including the U.S., Europe and Asia. *See* Exhibit 2. And while U.S. marketing and sales activity may be centered in California, the only fact necessary on sales is the *number* of products sold. Such information can be produced just as easily in any U.S. jurisdiction. But sales aside, there is no single "center of gravity" within the United States for the operative facts relevant to the *infringement* and *invalidity* issues in this case. The center of gravity for the consolidated cases, however, is in this District.

The cases ViewSonic relies on in support of its transfer request are inapposite. In *Cellularvision Tech. v. Alltel Corp.*, 508 F. Supp. 2d 1186 (S.D. Fla. 2007), *In re Hoffman-La Roche Inc.*, 587 F.3d 1333 (Fed. Cir. 2009) and *Trace-Wilco, Inc. v. Symantec Corp.*, No. 08-80877-CIV, 2009 WL 455432 (S.D. Fla. Feb. 23, 2009), defendants moved to transfer to the district <u>where the research and development for the infringing products occurred</u>. *See Cellularvision*, 508 F. Supp. 2d at 1193 (granting transfer to the Eastern District of Arkansas where the planning, engineering and operations departments were headquartered, and where evaluation, testing, approval, and decisions on implementation of new technologies were done);

*In re Hoffman-La Roche.*, 587 F.3d at 1336 (transfer was appropriate to the Eastern District of North Carolina where the accused drug was developed and tested); *Trace-Wilco*, 2009 WL 455432 at *1 (granting transfer to the Northern District of California, the location of the majority of the research and development division responsible for the design, testing and manufacture of the allegedly infringing products). *Here*, ViewSonic admits that the design, manufacturing and development is performed primarily in Taiwan and China. [DE 28, at 3-4.] This factor therefore weighs against a transfer to the C.D. California.

### 5. The inability to compel the presence of non-party witnesses is neutral

ViewSonic contends that none of the third-party witnesses it has identified are located within the subpoena power of either this Court or the transferee court [DE 28, at 7] and therefore this factor is neutral in the Court's analysis. For purposes of this motion, Plaintiffs agree.

### 6. ViewSonic has the means to defend this action in this District

ViewSonic contends that it is "a large corporation[] or company." [DE 28, at 6.] It defends patent cases throughout the U.S. There can be no added burden on it to account for its infringing acts in this District. This factor is therefore neutral.

### 7. The C.D. California is no more familiar with the governing law as this Court

ViewSonic does not contend that the C.D. California is more familiar with the governing law for patent infringement cases than this Court. This is a neutral factor.

### 8. Plaintiffs' initial choice of forum in this District is appropriate and should not be disturbed

Plaintiffs' choice of forum in this District should not be disturbed because it is not clearly outweighed by other considerations. *Microspherix*, 2012 WL 243764 at *4. The Southern District of Florida is a more convenient forum for Plaintiffs and *for the other defendants in the consolidated actions*. Further, Florida may be the forum that *best* has jurisdiction over all three

defendants. *See In re Air Disaster at San Antonio, Venezuela*, 331 F. Supp. 547, 548-549 (J.P.M.L. 1971), where the panel put weight on the plaintiffs' expressed preference for litigating all four related actions in the same district, and courts in alternative venues may not have had jurisdiction over the defendants as a whole. While this District may not be an individual plaintiff's "home" state, Plaintiffs' choice of forum for purposes of coordinating the consolidated cases against three defendants in a forum that has jurisdiction over all defendants makes good sense. This factor weights against transfer.

### 9. Adjudication of the instant action with the consolidated actions in this District is easier, more convenient, expeditious, and less inexpensive

"[T]he existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily for or against transfer." *Uniloc*, 2013 WL 4081076, at 7 (citing *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009)). "To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different district Courts leads to the wastefulness of time, energy and money that s. 1404(a) was designed to prevent." *Continental Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960). For this reason, factually similar cases, such as the ones at hand, should be litigated together to maximize efficiency for parties, witnesses, and the courts. *See*, *e.g.*, *Global Innovation Tech. Holdings, LLC v. Acer America Corp.*, 634 F. Supp. 2d 1346, 1348 (S.D. Fla. 2009) ("[L]itigating patent infringement of the same patents in different venues could lead to conflicting claim constructions, with deleterious impact on fairness and judicial economy.").

This case is one of three filed against three defendants that arise out of each defendant's infringement of the same patents. In proving their infringement claims in the consolidated actions, Plaintiffs will rely upon the *same relevant functionality* of the infringing televisions, reference the *same standard book*, and draw upon the *same evidence* to prove infringement by

12

compliance with *the same standard*. The claim construction issues will be identical, and the measure of damages will be identical.

A transfer of this one case to a different venue puts the Plaintiffs at risk of conflicting claim constructions. Indeed, there is simply no reason for two courts across the country to devote their limited time and resources to identical claim construction briefing, *Markman* hearings, and substantially similar trials on overlapping infringement issues.

Furthermore, ViewSonic readily admits that the California court has "a slower docket." [DE 28, at 8.] While docket considerations might sometimes be a minor consideration, "speed generally is considered a good thing in federal courts." *Microspherix*, 2012 WL 243764, at *5. *See also Uniloc*, 2013 WL 4081076, at 8. For instance, in *Uniloc*, the Court determined that even though a trial in the forum was only six months faster than the proposed transferee court, the speedier resolution of the litigation weighed against a transfer of venue. Here, ViewSonic admits that the C.D. California is slower than this Court. And, while ViewSonic speculates that the defendants in the related cases "may move to dismiss or transfer, or choose to settle" [DE 28, at 8-9], the consolidated cases are currently pending before this District and, are slated to be consolidated for pretrial purposes, with the first trial set for the April 7, 2014 trial period.

In sum, the public and private factors weigh against transferring this single action to the C.D. California because coordinated discovery, claim construction and trial of the consolidated actions in this District is easier, more convenient, expeditious, and less expensive. Transferring this action to the C.D. California would split up proceedings that would clearly benefit – both substantively and procedurally – from coordination.

## V.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully submit that this Court should deny the Motion to Transfer Venue to the United States District Court for the Central District of California [DE 28] because ViewSonic has not met its burden of proving that the convenience of the parties and witnesses, and the interest of justice, strongly favors a transfer to the Central District of California.

Dated: August 20, 2013

Respectfully submitted,

PROSKAUER ROSE LLP
2255 Glades Road, Suite 421 Atrium
Boca Raton, FL 33431
Telephone: (561) 241-7400
Facsimile:  (561) 241-7145

/s/ Payal Salsburg
Matthew Triggs
Florida Bar No. 0865745
mtriggs@proskauer.com
Payal Salsburg
Florida Bar No. 0057038
psalsburg@proskauer.com

PROSKAUER ROSE LLP
Steven M. Bauer (*pro hac vice*)
Justin J. Daniels (*pro hac vice*)
One International Place
Boston, MA 02110
(617) 526-9600

*Attorneys for Plaintiffs*

**Certificate of Service**

       I hereby certify that on this 20th day of August, 2013, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system, which will furnish an electronic copy to all counsel listed on the Service List below.

                                                /s/ Payal Salsburg

**SERVICE LIST**
Kenneth R. Adamo
Kirkland & Ellis, LLP
300 North LaSalle
Chicago, IL 60654
Tel: 312-862-2000
Fax: 214-969-5100
Email: kenneth.adamo@kirkland.com

Ryan M. Hubbard
Kirkland & Ellis, LLP
300 North LaSalle
Chicago, IL 60654
Tel: 312-862-2000
Email: ryan.hubbard@kirkland.com

Ury Fischer
Lott & Fischer
355 Alhambra Circle, Suite 1100
Coral Gables, FL 33134-1098
Tel: 305-448-7089
Fax: 305-446-6191
Email: ufischer@lottfischer.com

Ya-Chiao Chang
Kirkland & Ellis, LLP
300 North LaSalle
Chicago, IL 60654
Tel: 312-862-2000
Email: y.chang@kirkland.com